HOME BUILDERS ASSOCIATIONS
OF NORTHERN CALIFORNIA,
et al., Plaintiffs,

and

El Dorado County, California,
Intervenor–Plaintiff,

v.

Gale A. NORTON, Secretary of the
Department of Interior, et al.,
Defendants,

and

Jumping Frog Research Institute,
et al., Intervenor–Defendants.

No. 01–1291 (RJL).

United States District Court,
District of Columbia.

Nov. 6, 2002.

J. Michael Klise, Steven P. Quaries, Crowell & Moring, L.L.P., Washington, DC, Paul B. Campos, San Ramon, CA, for Homebuilders Ass'n of Northern California.

Robert J. Uram, Thomas D. Roth, Sheppard, Mullin, Richter & Hampton, LLP, San Francisco, CA, for Homebuilders Ass'n of Northern California, California Chamber of Commerce, California Building Industry Ass'n, California Alliance for Jobs, Building Industry Legal Defense Foundation.

Thomas D. Roth, Sheppard, Mullin, Richter & Hampton, LLP, San Francisco, CA, for El Dorado County/CA.

Kristen L. Gustafson, Lisa Lynne Russell, U.S. Dept. of Justice, Washington, DC, for Gale A. Norton, Marshall P. Jones, Jr., U.S. Fish and Wildlife Service.

Bruce E. Nilles, Michael R. Sherwood, Earthjustice Legal Defense Fund, Oakland, CA, for Jumping Frog Research Institute.

James Samuel Pew, Earthjustice Legal Defense Fund, Washington, DC, for Jumping Frog Research Institute, Center of Sierra Nevada, Pacific Rivers Council, the Center for Biological Diversity, Sierra Club.

## MEMORANDUM ORDER

LEON, District Judge.

Plaintiffs and intervenor-plaintiff brought the instant action under, *inter alia*, the Administrative Procedure Act (APA) and the Endangered Species Act (ESA), seeking review of a decision by the Secretary of the Interior to designate approximately 4.1 million acres in California as critical habitat of the California red-legged frog ("frog").

Now before the Court is the Proposed Consent Decree of plaintiffs Home Builders Association of Northern California, et al.; intervenor-plaintiff El Dorado County; and defendants Gale A. Norton, Secretary of the Department of Interior, et al. The aforementioned parties have reached settlement of all issues and claims in the instant action. The Proposed Consent Decree provides that the current critical habitat designation be vacated and remanded to the agency for a new rulemaking.

Intervenor-defendants, Jumping Frog Institute ("Institute"), et al., are not a party to the settlement, and have filed several objections to the Proposed Consent Decree. The primary issue in dispute among the parties is the methodology the Department of Interior will use during the new rulemaking to determine the critical habitat of the frog. The Consent Decree specifies that the economic impact analysis conducted during the new rulemaking must include *all* economic impacts of designating a critical habitat, in accordance

with *New Mexico Cattle Growers Ass'n v. U.S. Fish & Wildlife Service,* 248 F.3d 1277 (10th Cir.2001). The Institute, however, contends that the economic impact analysis set forth in the Consent Decree, and approved by the court in *New Mexico Cattle Growers,* is contrary to the Endangered Species Act. Only those economic impacts resulting from the critical habitat designation, and not from the species listing, according to the Institute, should be considered.[1]

█ When determining whether or not to enter a proposed consent decree, trial courts " 'need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties.' " *Citizens for a Better Environment, et al. v. Gorsuch,* 718 F.2d 1117, 1126 (D.C.Cir.1983)(quoting *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 616 F.2d 1006, 1014 (7th Cir.1980)).

█ Here, intervenor-defendants have not consented to the Proposed Consent Decree, and have filed their objections as well as presented oral argument to the Court to that effect. Although intervenor-defendants have withheld their consent, this does not prevent this Court from entering the Proposed Consent Decree. *See Local No. 93 v. City of Cleveland,* 478 U.S. 501, 529, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986). Consent decrees, as the Supreme Court explained in *Local No. 93,* are "primarily a means by which parties settle their disputes," and, as such, "[i]t has never been supposed that one party ... could preclude other parties from settling their own disputes and thereby withdrawing from litigation." *Id.* at 529, 106 S.Ct. 3063. So long as a party is given the opportunity to "air its objections," as the intervenor-defendants were in this instance through both written briefs and oral argument before the Court, and the district court has determined that the settlement is fair and reasonable, a party's lack of consent will not block the entry of the consent decree. *Id.*

Upon review of the intervenor-defendants objections, and the responses of the parties to the Consent Decree, the Court finds that the Proposed Consent Decree is fair, adequate, and reasonable under the facts, and should be entered.

█ In particular, the Court has closely reviewed the parties' arguments regarding the validity of the economic impacts analysis advanced by the Tenth Circuit in *New Mexico Cattle Growers,*[2] and adopted thereafter by the Fish and Wildlife Service as its policy in this case and all others throughout the country. While the D.C. Circuit has not specifically addressed

---

1. *See* Intervenor–Defs.'s Objections to Proposed Consent Decree at 17–19.

2. Intervenor-defendants, Jumping Frog Research Institute, et al., argues that an "incremental baseline approach" is required by the ESA. Under the baseline approach, only those economic impacts associated with designating critical habitat may be considered when determining the critical habitat of a listed species; economic costs resulting from the listing of the species itself must be ignored, according to intervenor-defendants, because decisions to list species must be made solely on the basis of scientific and commercial data, and not economic cost data. Parties to the Proposed Consent Decree, however, while acknowledging that economic impacts are not relevant to listing decisions, argue that Congress clearly intended that economic impacts be considered when determining critical habitat. The decision of the Department of Interior to adopt the methodology of *New Mexico Cattle Growers,* is "fair and reasonable," and consistent with the ESA. *See* Home Builders Association of Northern California, et al., Resp. to Intervenor–Defs.' Objections to Proposed Consent Decree at 16.

whether or not it agrees with the *New Mexico Cattle Growers* case, one member of this Court has recently faced that issue. In *National Association of Home Builders v. Evans,* Civ. No. 00–2799, 2002 WL 1205743, at *2, *3 (D.D.C. Apr.30, 2002) Judge Colleen Kollar–Kotelly endorsed the Tenth Circuit's approach in *New Mexico Cattle Growers,* finding the opinion to be "persuasive," "well-reasoned," and "comport[ing] with the express statutory language of Congress." *Id.* at *3. Judge Kollar–Kotelly found that while economic costs cannot be considered at the listing stage, an economic impacts analysis is required at the critical habitat designation stage. Considering only economic impacts stemming from listing was a "narrow construction of what 'economic impact' the agency should consider in designating a critical habitat." *Id.* Recognizing that there was disagreement over the proper economic methodology, Judge Kollar–Kotelly deferred to the agency, and vacated and remanded the rule.[3]

The Court agrees with Judge Kollar–Kotelly's opinion in *National Association of Home Builders.* Clearly, the Department of Interior, in its expertise, has decided to adopt the economic impact methodology of *New Mexico Cattle Growers* and apply it to all critical habitat determinations nationwide. While economic costs cannot be considered at the listing stage, the language of the Endangered Species Act specifically contemplates that an eco-

nomic analysis be conducted when determining critical habitat. *See* 16 U.S.C. § 1533(b)(2). Under the "baseline approach" advocated by intervenor-defendants, however, all economic costs resulting from the listing of a species fall below "the baseline" and are, essentially, disregarded when analyzing the economic impact of critical habitat designation. The Court does not find that the language of the ESA supports such an interpretation to the exclusion of the economic impact methodology of *New Mexico Cattle Growers.* As the Department of Interior has represented to the Court its intention to apply the *New Mexico Cattle Growers* methodology to all critical habitat determinations, the Court will, in the words of Judge Kollar–Kotelly, "leave it to the agency's wisdom and institutional knowledge to remedy the problem" regarding the methodology to apply under the ESA. *National Association of Home Builders,* at *3.

 Moreover, the Court is convinced that the Proposed Consent Decree is, in all other respects, fair, reasonable, and adequate. Vacating and remanding the critical habitat designation of the California red-legged frog, pursuant to the Proposed Consent Decree, will in no way disturb the considerable protections, both civil and criminal, afforded to the California red-legged frog as a listed species under the ESA. During oral argument regarding the Proposed Consent Decree, counsel for the

---

**3.** One other judge in this Court has addressed this issue, but did so *prior* to the *New Mexico Cattle Growers* case. Judge Norma Holloway Johnson in *Trinity County Concerned Citizens v. Babbitt,* Civ. No. 92–1194, 1993 WL 650393, at *4 (D.D.C. Sept.20, 1993) adopted the baseline approach when she found that only those economic costs incurred as a result of making a critical habitat designation—and not those costs incurred as a result of listing a species—could be considered when determining critical habitat. Judge Kotelly in *National*

*Association of Home Builders* recognized that "[i]n agreeing with the Tenth Circuit, the Court realizes it is disagreeing with a trial judge from this District. In *Trinity County,* Judge Norma Holloway Johnson wrote that consideration of economic costs ... was improper in making the critical habitat designation. While the Court respects Judge Johnson's opinion, it is not bound by it because District Court decisions do not establish binding precedent." *National Association of Home Builders* at *2 (citations omitted).

intervenor-defendants, in essence, acknowledged the same. Additionally, vacating the rule, rather than leaving it in place pending a new rule, is fair and reasonable in light of the Department of Interior's decision to vacate all critical habitat designations in order to conduct new rulemakings consistent with the methodology of *New Mexico Cattle Growers.* Finally, a consent decree is not only a contract between the parties to the decree, but is also a "'judicial act.'" *Citizens for a Better Environment, et al. v. Gorsuch,* 718 F.2d 1117, 1125 (D.C.Cir.1983)(quoting *United States v. Swift & Co.,* 286 U.S. 106, 115, 52 S.Ct. 460, 76 L.Ed. 999 (1932)). As such, the Court does not find that the notice and comment requirements of 5 U.S.C. § 553 apply before the Court's adoption of a consent decree, as adoption of a consent decree is not an agency act under the APA.

For the reasons stated above, it is hereby ORDERED that the Joint Motion by plaintiffs, intervenor-plaintiff, and defendants for entry of the consent decree is hereby GRANTED.

SO ORDERED.